Hilary L. Preston (*pro hac vice*)
  hpreston@velaw.com
Rachael P. McClure (*pro hac vice*)
  rmcclure@velaw.com
**VINSON & ELKINS L.L.P.**
666 Fifth Avenue, 26th Floor
New York, NY  10103-0040
Telephone:  (212) 237-0129
Facsimile:   (917) 849-5342

Stephen C. Stout (*pro hac vice*)
  sstout@velaw.com
**VINSON & ELKINS L.L.P.**
2801 Via Fortuna, Suite 100
Austin, TX  78746-7568
Telephone:  (512) 542-8440
Facsimile:   (512) 542-8612

Darryl M. Woo (CSBN 100513)          Bruce L. Ishimatsu (CSBN 86145)
  dwoo@velaw.com                       bruce@ishimatsulaw.com
**VINSON & ELKINS L.L.P.**              **ISHIMATSU LAW GROUP P.C.**
555 Mission Street, Suite 2000        4712 Admiralty Way, No. 1012
San Francisco, CA  94105              Marina Del Rey, CA  90292
Telephone:  (415) 979-6980            Telephone: (310) 200-4060
Facsimile:   (415) 520-5377           Facsimile: (310) 496-1540

*Attorneys for Defendant NFL ENTERPRISES LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAGRAVISION SA and OPENTV, INC., | Case No. 2:17-cv-03919-AB-SK |
| Plaintiffs, | **DEFENDANT NFL ENTERPRISES LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS 2, 4, 5, 6, 7, AND 8 OF PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)** |
| v. | |
| NFL ENTERPRISES LLC, | |
| Defendant. | |
| | Date: July 31, 2017 |
| | Time: 10:00 a.m. |
| | Courtroom: 7B |
| | Judge: Honorable André Birotte Jr. |

# TABLE OF CONTENTS

NOTICE OF MOTION.................................................................................1

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS ............................................................................2

ARGUMENT .................................................................................................2

I.     COUNT 2 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE CLAIM 1 THE '729 PATENT IS INVALID UNDER 35 U.S.C. § 101. ....................................................................................5

     A.     Claim 1 of the '729 Patent Fails Step One Because It Is Directed to the Abstract Idea of Retrieving and Inserting Data into a Presentation.....................................................6

     B.     Claim 1 of the '729 Patent Fails Step Two Because It Does Not Disclose an "Inventive Concept" Sufficient to Transform the Ineligible Abstract Idea into a Patent-Eligible Invention. .......................8

II.    COUNT 4 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE CLAIM 27 THE '033 PATENT IS INVALID UNDER 35 U.S.C. § 101. ..................................................................................10

     A.     Claim 27 of the '033 Patent Fails Step One Because It Is Directed to the Abstract Idea of Taking an Action Based on Relationship Information. ...................................................11

     B.     Claim 27 of the '033 Patent Fails Step Two Because It Does Not Disclose an "Inventive Concept" Sufficient to Transform the Ineligible Abstract Idea into a Patent-Eligible Invention. ..............13

III.   COUNT 5 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE CLAIM 1 OF THE '169 PATENT IS INVALID UNDER 35 U.S.C. § 101. ..................................................................................16

     A.     Claim 1 of the '169 Patent Fails Step One Because It Is Directed to the Abstract Idea of Not Beginning a Presentation Until Certain Resources Are Acquired. ...................................17

     B.     Claim 1 of the '169 Patent Fails Step Two Because It Does Not Disclose an "Inventive Concept" Sufficient to Transform the Ineligible Abstract Idea into a Patent-Eligible Invention. ..............19

IV.   COUNT 6 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE CLAIM 1 OF THE '888 PATENT IS INVALID UNDER 35 U.S.C. § 101. ..................................................................................21

     A.     Claim 1 of the '888 Patent Fails Step One Because It Is Directed to the Abstract Idea of Organizing and Combining Media Information for Transmission. ...............................................22

1
2
     B.     Claim 1 of the '888 Patent Fails Step Two Because It Does Not Disclose an "Inventive Concept" Sufficient to Transform the Ineligible Abstract Idea into a Patent-Eligible Invention. ..................24

3
4
V.     COUNT 7 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE CLAIM 8 OF THE '736 PATENT IS INVALID UNDER 35 U.S.C. § 101. ........................................................................26

5
6
     A.     Claim 8 of the '736 Patent Fails Step One Because It Is Directed to the Abstract Idea of Indicating that Information Is Available and Accessing that Information on Request..........................27

7
8
     B.     Claim 8 of the '736 Patent Fails Step Two Because It Does Not Disclose an "Inventive Concept" Sufficient to Transform the Ineligible Abstract Idea into a Patent-Eligible Invention. ..................29

9
10
VI.     COUNT 8 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE CLAIM 19 THE '172 PATENT IS INVALID UNDER 35 U.S.C. § 101. .......................................................................31

11
12
     A.     Claim 19 of the '172 Patent Fails Step One Because It Is Directed to the Abstract Idea of Limiting Access to Information Based on Location...................................................................31

13
14
     B.     Claim 19 of the '172 Patent Fails Step Two Because It Does Not Disclose an "Inventive Concept" Sufficient to Transform the Ineligible Abstract Idea into a Patent-Eligible Invention. ...............33

15
CONCLUSION............................................................................35

16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

**Cases**

3
*Activision Publ'g, Inc. v. xTV Networks Ltd.*,
    No. CV 16-00737 SJO (MRWx), 2016 WL 6822751 (C.D. Cal. July
4
    25, 2016) .................................................................................................9, 25

5
*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ........................................7, 12, 18, 28
6

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
7
    838 F.3d 1253 (Fed. Cir. 2016) ...............................................3, 7, 8, 24

8
*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014).............................................................passim
9

*Broadband iTV, Inc. v. Oceanic Time Warner Cable, LLC*,
10
    135 F. Supp. 3d 1175 (D. Haw. 2015), *aff'd sub nom. Broadband
    iTV, Inc. v. Hawaiian Telcom, Inc.*, 669 F. App'x 555 (Fed. Cir.
11
    2016) ............................................................................................15

12
*CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.*,
    No. 3:16-cv-906, 2017 WL 536833 (E.D. Va. Feb. 9, 2017)..........12, 13
13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
14
    776 F.3d 1343 (Fed. Cir. 2014) ...............................................3, 17, 27

15
*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) ...............................................14
16

*DDR Holdings, LLC v. Hotels.com, L.P.*,
17
    773 F.3d 1245 (Fed. Cir. 2014) ...............................................28

18
*Diamond v. Diehr*,
    450 U.S. 175 (1981).................................................................30
19

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
20
    758 F.3d 1344 (Fed. Cir. 2014) ...............................................23

21
*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ...............................................passim
22

*EveryMD.com LLC v. Facebook, Inc.*,
23
    No. CV 16-06473-AB (JEMx) (C.D. Cal. May 10, 2017)...........7, 20, 28, 29

24
*Evolutionary Intelligence LLC v. Sprint Nextel Corp.*,
    --- F. App'x ----, 2017 WL 655442 (Fed. Cir. 2017) ...........20
25

*FairWarning IP, LLC v. Iatrie Sys., Inc.*,
26
    839 F.3d 1089 (Fed. Cir. 2016) ...............................................12, 13, 28

27
*Front Row Technologies, LLC v. NBA Media Ventures, LLC*,
    204 F. Supp. 3d 1190 (D.N.M. 2016)........................................32, 33

28

*Groundswell Techs., Inc. v. Synapsense Corp.*,
   No. CV 15-06024-AB (JPRx), 2016 WL 6661177 (C.D. Cal. Apr. 28,
   2016) ........................................................................................3, 15, 23, 24

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ...................................................passim

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) ...................................................11

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
   200 F. Supp. 3d 565 (W.D. Pa. 2016) ............................................7

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017) ...................................................14, 20, 25

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016) ...................................................14

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ...................................................3

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   66 F. Supp. 3d 829 (E.D. Tex. 2014)...........................................6, 11, 13, 17

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012).......................................................................33

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016) ...................................................6, 11

*Netflix, Inc. v. Rovi Corp.*,
   114 F. Supp. 3d 927 (N.D. Cal. 2015), *aff'd*, 670 F. App'x 704 (Fed.
   Cir. 2016) ...................................................................................15

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ...................................................29

*OpenTV, Inc. v. Apple. Inc.*,
   No. 14-CV-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ................24

*OpenTV, Inc. v. Netflix Inc.*,
   No. 3:14-cv-01525, Dkt. No. 71 (N.D. Cal. Dec. 16, 2014) ................20

*Rose v. Bartle*,
   871 F.2d 331 (3d Cir. 1989) ........................................................4

*Secure Mail Sols. LLC v. Universal Wilde, Inc.*,
   169 F. Supp. 3d 1039 (C.D. Cal. 2016).........................................14

*Stuart v. Cadbury Adams USA, LLC*,
   No. CV 09-6295 AHM (CWx), 2010 WL 1407303 (C.D. Cal. Apr. 5,
   2010), *aff'd*, 458 F. App'x 689 (9th Cir. 2011) ...........................4

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016) ............................................................. 18

*Ultramercial, Inc. v. Hulu LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ......................................... 19, 21, 24, 29

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ................................................................. 4

*Williamson v. Citrix Online, LLC*,
  212 F. Supp. 3d 887 (C.D. Cal. 2016), *aff'd*, --- F. App'x ----, 2017
  WL 1291313 (Fed. Cir. 2017) ......................................................... 4, 19

**Statutes**

35 U.S.C. § 101 ...................................................................................... 1, 3

**Rules**

Fed. R. Civ. P. 10(c) .............................................................................. 2, 4

Fed. R. Civ. P. 12(b)(6) ......................................................................... 3, 4

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 31, 2017, at 10:00 a.m., or as soon thereafter as this matter may be heard, Defendant NFL Enterprises LLC ("NFLE") will and hereby moves to dismiss with prejudice Counts 2, 4, 5, 6, 7, and 8 of Plaintiffs Nagravision SA and OpenTV, Inc.'s Complaint for Patent Infringement (Dkt. No. 1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Counts 2, 4, 5, 6, 7, and 8 of the Complaint allege that NFLE infringes U.S. Patent Nos. 7,421,729; 7,950,033; 7,055,169; 7,020,888; 6,233,736; and 6,154,172, respectively, but the asserted claims of those patents are facially invalid for failing to recite patent-eligible subject matter under 35 U.S.C. § 101. Those Counts should therefore be dismissed with prejudice for failing to allege plausible claims for patent infringement.

This Motion will be heard in the Courtroom of Judge André Birotte Jr. for the United States District Court in the Central District of California. The Court is located at the United States Courthouse at 350 West First Street, Los Angeles, California 90012, in Courtroom 7B.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the pleadings on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 15, 2017.

Dated: June 30, 2017

VINSON & ELKINS L.L.P

By: _/s/ Hilary L. Preston_
     Hilary L. Preston

*Attorneys for Defendant*
*NFL Enterprises LLC*

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant NFL Enterprises LLC ("NFLE") respectfully moves to dismiss with prejudice Counts 2 and 4–8 of Plaintiffs Nagravision SA and OpenTV, Inc.'s ("Plaintiffs") Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). The patent claims asserted in these counts are invalid for claiming patent-ineligible subject matter under 35 U.S.C. § 101 and governing precedent.

## PRELIMINARY STATEMENT

This action represents the third complaint that these Plaintiffs have filed against NFLE, and the tenth lawsuit in the past five years either filed by them alleging, or filed against them based on their allegations of, infringement of these or similarly meritless patents. Plaintiffs are serial litigants, and this Court can and should narrow the scope of this case by dismissing those patents that are, on their face and as a matter of law, invalid for claiming ineligible subject matter. Counts 2 and 4–8 should be dismissed because the patent claims asserted in those counts (the "Challenged Claims") are invalid as directed to patent-ineligible abstract ideas. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The Challenged Claims set out well-known and fundamental abstract ideas that humans have performed without computers or technology for many years—a hallmark of patent-ineligible subject matter. These claims tellingly rely on broad, result-focused, functional language that fails to provide detail as to *how* any of the abstract ideas are implemented.

The Challenged Claims also do not involve any inventive concept to rescue them from ineligibility. *See Alice*, 134 S. Ct. at 2357. Most of the claims are not facially tied to any computer hardware or software at all, and therefore amount to bare recitations of process steps designed to monopolize *any and thus every* application of the abstract ideas they recite. Likewise, Plaintiffs' attempt to save their claims by limiting the claimed abstract ideas to a particular technology field, such as broadcast television or computers, cannot render them patent-eligible.

Plaintiffs further reveal the weakness of their patents by improperly attempting to incorporate into their pleading declarations that were filed in their previous infringement action against NFLE in the Eastern District of Texas. Plaintiffs do so in an attempt to allege that their abstract and patent-ineligible claims are somehow "inventive" because they address technological problems. But these declarations should be disregarded because they are outside the pleadings and are not eligible for incorporation under Rule 10(c). Moreover, the patents themselves confirm that the Challenged Claims simply apply abstract ideas in the digital media context, with admittedly conventional computer technology. Plaintiffs' extrinsic evidence thus cannot rescue their claims and should be disregarded because it is contradicted by the patent claims and specifications themselves, which do not indicate that the Challenged Claims improve the function of computers or solve problems arising specifically in the context of digital TV.

Accordingly, Counts 2 and 4–8 of Plaintiffs' Complaint should be dismissed with prejudice for failure to state a claim.

## STATEMENT OF FACTS

Plaintiffs allege that a number of NFLE video platforms and applications infringe eight unrelated patents: U.S. Patent Nos. 7,996,861 ("'861 patent"), 7,421,729 ("'729 patent"), 7,028,327 ("'327 patent"), 7,950,033 ("'033 patent"), 7,055,169 ("'169 patent"), 7,020,888 ("'888 patent"), 6,233,736 ("'736 patent"), and 6,154,172 ("'172 patent") (collectively, the "Asserted Patents").[1] Compl. ¶¶ 1, 3. The Asserted Patents involve a variety of disparate technologies ranging from, for example, PIN-based authentication to video hyperlinks.

## ARGUMENT

The Challenged Claims are invalid as directed to patent-ineligible abstract ideas. "[A]bstract ideas are not patentable." *Alice*, 134 S. Ct. at 2354. Patent claims directed

---

[1] The Asserted Patents are attached to Plaintiffs' Complaint as Exhibits A–H.

to abstract ideas are thus invalid for failing to claim subject matter eligible for patenting under 35 U.S.C. § 101, and complaints asserting such claims can and should be dismissed at the pleading stage, for failure to state a claim under Rule 12(b)(6). *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347–49, 1351 (Fed. Cir. 2014).

Whether a patent claim is invalid as directed to patent-ineligible subject matter is evaluated under a now well-known two-part test. *First*, a court must "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice*, 134 S. Ct. at 2355. Courts "start by ascertaining the basic character of the subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015). This "first-stage inquiry . . . look[s] at the 'focus' of the claims, their 'character as a whole.'" *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). As this Court recognized in *Groundswell Technologies, Inc. v. Synapsense Corp.*, step one asks that we "identify the purpose of the claim—in other words, what the claimed invention is trying to achieve—and ask whether that purpose is abstract." No. CV 15-06024-AB (JPRx), 2016 WL 6661177, at *5 (C.D. Cal. Apr. 28, 2016) (Birotte, J.).

*Second*, if the claims are directed to an abstract idea, the court asks whether the claims contain "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (citations omitted). This "inventive concept" must be more than a bare recitation of generic computing hardware already known in the art. *Id.* at 2358. Similarly, limiting an abstract idea to a particular technological environment or field of use is not an inventive concept. *Id.* "In applying the principles emerging from the developing body of law on abstract ideas under section 101, [the Federal Circuit] has noted that claims that are 'so result-focused, so functional, as to effectively cover any solution to an identified problem' are frequently held ineligible under section 101." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1265 (Fed. Cir. 2016).

Plaintiffs—apparently cognizant of the Challenged Claims' weaknesses from claiming patent-ineligible subject matter—present self-serving, conclusory allegations in the Complaint that are legally irrelevant and should be disregarded in the Court's Section 101 analysis.  For example, the Complaint includes citations to three declarations of purported experts that were improperly included in Plaintiffs' opposition to NFLE's motion to dismiss this case's predecessor action in Texas.  *See, e.g.*, Compl. ¶¶ 49–50, 52, 92–93, 95, 116–17, 119, 138–39, 141, 161–62, 164.  These declarations should not be considered on a Rule 12(b)(6) motion because they are outside the pleadings and cannot be incorporated by reference under Rule 10(c) because they do not "form the basis of the complaint."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Rose v. Bartle*, 871 F.2d 331, 339 (3d Cir. 1989) ("Rule 10(c) [documents] consist largely of documentary evidence, specifically, contracts, notes, and other "writing[s] on which [a party's] action or defense is based . . . .  We do not believe that an affidavit is a 'written instrument' as that term is used in Rule 10(c)."); *Stuart v. Cadbury Adams USA, LLC*, No. CV 09-6295 AHM (CWx), 2010 WL 1407303, at *4 (C.D. Cal. Apr. 5, 2010), *aff'd*, 458 F. App'x 689 (9th Cir. 2011) (disallowing an affidavit providing expert testimony generated for the purpose of litigation because it was not a "written instrument" under Rule 10(c) of the Federal Rules of Civil Procedure).

Moreover, Plaintiffs' declarations should be disregarded because they contradict the patent claims and specifications.  Faced with a similar situation in *Williamson v. Citrix Online, LLC*, this Court rejected an expert declaration opining that the claims improved computer functionality and addressed a problem unique to computers.  212 F. Supp. 3d 887 (C.D. Cal. 2016), *aff'd*, --- F. App'x ----, 2017 WL 1291313 (Fed. Cir. 2017).  The Court rejected the declaration because it contradicted the patent specification, which "d[id] not contain any statements indicating that the claimed invention improve[d] the function of computers or solve[d] a problem that arose uniquely in the context of computers and computer networks."  *Id.* at 904.  Similarly,

here, Plaintiffs' experts' assertion that the Challenged Claims address technological problems unique to computers or digital TV are contradicted by the claim language and patent specifications, which contain none of those statements.

As explained in detail below, the Challenged Claims all fail both steps of the *Alice* test.[2]  Each claim is directed to an abstract idea, and the claims lack any inventive concept sufficient to confer patent eligibility.  At best, the Challenged Claims do nothing more than take abstract ideas and implement them with generic technology, which is legally insufficient to render the claims patent eligible.

## I.   COUNT 2 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE CLAIM 1 THE '729 PATENT IS INVALID UNDER 35 U.S.C. § 101.

The Complaint alleges that NFLE infringes Claim 1 of the '729 patent.  Compl. ¶ 51.  The patent purports to provide a "method in which video indicators, such as tags and markers, can be generated and inserted in a video signal at the end-user location, such as a set-top box or viewer's computer to utilize and[/]or establish content information regarding video segments."  '729 patent, col.1, ll.43–47.  This is no more than the abstract idea of retrieving and inserting data into a presentation.

Claim 1 of the '729 patent recites this concept with broad, result-oriented language.   The claim does not specify how any of the claimed functions—i.e., "generating" a time code and corresponding address signal, "applying" the address signal to a database, "accessing" the database, or "encoding" the video stream—are accomplished.  Claim 1 recites:

> 1.  A method of generating and inserting indicators into a video stream, said method comprising:

---

[2] Plaintiffs' Complaint does not allege that NFLE infringes any other claims of the Asserted Patents.  If Plaintiffs assert that NFLE infringes other claims and argues in its opposition that the claims addressed here are not representative of those newly identified claims, NFLE reserves the right to argue in reply or in further briefing that those additional claims are also invalid under Section 101.

generating a time code signal that is synchronized with the video stream;

applying the time code signal to an address generator that decodes the time code signal and generates a corresponding address signal;

applying the corresponding address signal to a database, said database storing a plurality of indicators;

accessing a set of indicators that are stored in said database using said address signal as an address into said database; and

encoding said video stream with said set of indicators accessed from said database using said address signal.

'729 patent, col.12, l.59 – col.13, l.5.

## A.    Claim 1 of the '729 Patent Fails Step One Because It Is Directed to the Abstract Idea of Retrieving and Inserting Data into a Presentation.

Claim 1 of the '729 patent is directed to the abstract idea of retrieving and inserting ("encoding") data ("indicators, such as tags and markers") into a presentation ("video stream").  "The fact that [a claimed] invention," as here, "can readily be performed by humans is a factor that has frequently been held to be indicative of unpatentability."  *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 842 (E.D. Tex. 2014) (Bryson J. by designation); *see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (finding claims that "could all be performed by humans without a computer" were abstract).  Here, the specification acknowledges that the steps could be performed "manually" by a human:

> The present invention may also comprise a method of *manually inserting indicators in a video stream comprising*: displaying the video stream to an operator; delaying the video stream to generate a delayed video stream; displaying the delayed video stream to an operator; inserting indicators at desired locations in the delayed video stream based upon information viewed in the video stream.

'729 patent, col.2, ll.5–11 (emphasis added); *see also id.*, col.8, l.42 – col.9, l.22 (describing Figure 7 and explaining in detail how a human operator may view a video signal, generate tags and markers, and apply the tags and markers to an encoder to be

inserted in the video signal at precise times).  This admission leaves no doubt that Claim 1 of the '729 patent is directed to an abstract idea.  *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 200 F. Supp. 3d 565, 575 (W.D. Pa. 2016) (finding claims directed to the abstract idea of "identifying and characterizing electronic files" because the patent admitted that "files can be selected for review and characterized as acceptable or unacceptable . . . using [a] . . . *manual* process" (emphasis in original)).

Additionally, "[t]he purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea."  *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016).  Claim 1 does not recite any hardware or device.  It also does not specify how the time code is generated or synchronized with the video stream, how the time code is applied to the address generator, how the address generator decodes the time code or generates an address signal, how the address signal is applied to the database, or how the indicators are encoded into the video stream.  *See, e.g.*, '729 patent, col.5, ll.11–36; *id.*, col.7, ll.22–49; *id.*, col.8, ll.20–41.  This type of result-focused, functional language is not patent-eligible because it threatens to monopolize the abstract idea itself.  *See Affinity Labs v. DIRECTV*, 838 F.3d at 1265 ("[C]laims that are 'so result-focused, so functional, as to effectively cover any solution to an identified problem' are frequently held ineligible under section 101."); *see also EveryMD.com LLC v. Facebook Inc.*, No. CV 16-06473-AB (JEMx), slip op. at 12 (C.D. Cal. May 10, 2017) (Dkt. No. 32) (Birotte, J.) (explaining that vague, functional language indicates that claims are not directed to technological improvements).

The purported advance of Claim 1 is providing a method in which video indicators, such as tags and markers, can be inserted in a video stream, and not any particular inventive technology for accomplishing that goal.  Therefore, Claim 1 is drawn to an abstract idea.

**B.   Claim 1 of the '729 Patent Fails Step Two Because It Does Not Disclose an "Inventive Concept" Sufficient to Transform the Ineligible Abstract Idea into a Patent-Eligible Invention.**

Claim 1 fails step two of the *Alice* analysis because it does not contain any "additional features" that render the claim patentable. *Alice*, 134 S. Ct. at 2357; *Affinity Labs v. DIRECTV*, 838 F.3d at 1262.  The Complaint alleges that the '729 patent is inventive because it "effects an improvement in technology because it provides a repeatable and efficient mechanism to encode content and/or tags/markers with a video stream based on the time code synchronized with the video stream."  Compl. ¶ 49.  However, "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

The Complaint also alleges that Claim 1 is not routine or conventional because it "requires the specific use of a time code generator, address generator, database, and encoder in a particular way."  Compl. ¶ 52.  This statement—and the extrinsic declaration that it relies on—directly contradict the '729 patent specification, which explains that the invention employs existing, conventional technology.  For example, the specification explains that for "encoding the video stream . . . a standard back channel frequency can be used to provide the indicator information in accordance with *well-known* back channel encoding techniques."  '729 patent, col. 6, ll.66–67; *id.*, col.7, ll.1–4 (emphasis added).  Additionally, the specification confirms that the "time code" is merely an identifier for the "address generator," the "address signal" merely identifies which data to retrieve, and the "database" to which the address signal is applied is simply a "look-up table."  *Id.*, col.5, ll.11–36; *id.*, col.7, ll.22–49; *id.*, col.8, ll.20–41.  And the specification does not identify any inventive algorithms or inventive means for generating time codes, generating corresponding address signals, or encoding a video stream with data.  Claim 1 is thus directed to: (i) using a hierarchy of

1    *generic* time and data identifiers to look up data, and (ii) encoding a video stream with
2    that data using well-known encoding techniques.

3        The "time code signal," "address generator," "address signal," and "database"
4    cannot supply inventive concepts.  As this Court recognized in a case involving similar
5    claim limitations, these elements amount to "nothing more than taking the general
6    concept of using identifiers with pointers to other information and apply[ing] it on a
7    computer, which courts have long held cannot confer patent-eligibility."  *Activision*
8    *Publ'g, Inc. v. xTV Networks Ltd.*, No. CV 16-00737 SJO (MRWx), 2016 WL 6822751,
9    at *10 (C.D. Cal. July 25, 2016) (citation omitted).  The *Activision* claims relied on a
10   "Thing ID" representing an "Informative Thing," associated with a location of
11   information in an information store, to retrieve the information.  Analogously, the '729
12   patent claims rely on a "time code signal" and its "corresponding address signal,"
13   associated with a location of data (i.e., indicators) in a database, to access the data.

14       In *Activision*, the Court determined that those claims were "directed to the
15   abstract idea of using information stored in one place to determine the location of and
16   retrieve information stored in a second place," and thus were "indistinguishable from
17   the idea of using an information desk, a catalogue, or the Dewey Decimal System to
18   locate a desired library book."  *Id.* at *6–8.  With respect to *Alice* step two, the Court
19   explained that "the recitation of a 'Thing ID' which represents an identity of the
20   'Informative Thing' that is . . . used to . . . retrieve the information associated with the
21   'Informative Thing' from the information store cannot supply the necessary inventive
22   concept" because the Thing ID "does not limit the claim scope in a way that does not
23   solely capture the abstract idea."  *Id.* at *10.  Similarly, here, the recitation of a time
24   code signal that corresponds to an address signal that is used to retrieve data from a
25   database cannot supply an inventive concept because these functional elements do not
26   limit the '729 patent claims in a way that does not solely capture the abstract idea of
27   retrieving and inserting data into a presentation.

28

Because Claim 1 also fails step two of the *Alice* analysis, it is invalid for claiming patent-ineligible subject matter.

## II.   COUNT 4 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE CLAIM 27 THE '033 PATENT IS INVALID UNDER 35 U.S.C. § 101.

The Complaint alleges that NFLE infringes Claim 27 of the '033 patent.  Compl. ¶ 94.  Claim 27 is directed to software for initiating "an action" in response to receiving "relational metadata."   The specification explains that "metadata is data, or information, about other data" and "relational metadata describes relationships between two or more sets of data." '033 patent, col.2, ll.47–48; *id.*, col.6, l.67 – col.7, l.2.  The patent purports to provide a way of "utilizing metadata to enhance the viewing experience" by performing "an action" corresponding to received relational metadata. *Id.*, col.2, l.58 – col.3, l.7.  This is nothing more than the abstract idea of taking an action based on relationship information.

Claim 27 of the '033 patent recites this concept with broad, result-oriented language and does not specify how any of the claimed functions—i.e., the recited "receive," "identify," or "initiate" functions—are accomplished.  Nor does the claim limit what sort of "action" must be taken in response to receiving the metadata.  Claim 27 recites:

> 27.  A computer readable storage medium comprising program instructions, wherein the program instructions are executable to:
>
> > receive relational metadata corresponding to a broadcast signal, wherein the relational metadata includes a relational metadata instruction with at least a relationship identifier and a dataset element, wherein said relationship identifier specifies a type of relationship between a first data and a second data, and wherein the dataset element identifies the second data;
> >
> > identify an action corresponding to the relational metadata instruction; and
> >
> > initiate the action in response to the identifying; wherein the relationship of the second data to the first data is selected from the group consisting of: a summary, a correction, a repeat, a highlight, more detailed content, related text, and a related icon.

'033 patent, col.20, l.63 – col.21, l.12.

### A. Claim 27 of the '033 Patent Fails Step One Because It Is Directed to the Abstract Idea of Taking an Action Based on Relationship Information.

Claim 27 of the '033 patent is directed to the simple idea of taking "an action" based on relationship information. The claim sets out three steps: (1) receiving information about a relationship; (2) identifying "an action" corresponding to the information; and (3) initiating that action. '033 patent, col.20, l.63 – col.21, l.12. And the specification explains that metadata can include any type of information at all: "metadata" is simply "data, or information, about other data," and "relational metadata" is "metadata which indicates a relationship between two or more sets of data." *Id.*, col.2, ll.47–48; *id.*, col.6, ll.5–7.

The claimed pattern of receiving information, analyzing it, and taking an action in response, has repeatedly been found to be abstract in a variety of contexts. "[C]ollecting information, including when limited to particular content (which does not change its character as information)" and "analyzing information by steps people go through in their minds, or by mathematical algorithms" are mental processes that fall within the realm of abstract ideas. *Elec. Power*, 830 F.3d at 1353–54; *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (listing cases finding similar data manipulation steps abstract).

The steps of Claim 27 can be and have been performed by humans without the benefit of technology for decades—further confirming that they are patent-ineligible. *See Loyalty Conversion*, 66 F. Supp. 3d at 842; *see also Mortg. Grader, Inc.*, 811 F.3d at 1324. For example, as shown in the table below, a newspaper editor who receives a letter (second data) explaining that a statement in a past article (first data) was erroneous prints a correction (action).

| '033 Patent, Claim 27 | Mental Steps |
|---|---|
| A computer readable storage medium comprising program instructions, wherein the program instructions are executable to: receive relational metadata corresponding to a broadcast signal, | A newspaper editor receives a letter relating to an earlier printed article. |
| wherein the relational metadata includes a relational metadata instruction with at least a relationship identifier and a dataset element, wherein said relationship identifier specifies a type of relationship between a first data and a second data, and wherein the dataset element identifies the second data; | The letter explains that information printed in the earlier article (first data) was wrong (relationship identifier) and provides the correct information (second data). |
| identify an action corresponding to the relational metadata instruction; and | The editor decides to print a correction to the earlier article. |
| initiate the action in response to the identifying; | The editor begins drafting the correction. |
| wherein the relationship of the second data to the first data is selected from the group consisting of: a summary, a correction, a repeat, a highlight, more detailed content, related text, and a related icon. | The relationship of correct information in the letter to the earlier article is a "correction." |

In addition, "[t]he purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs v. Amazon.com*, 838 F.3d at 1269.  The claim does not specify the types of information received, from where it is received, or how it is received.  The claim also fails to provide any detail regarding how "the action" is identified or initiated, much less what type of action is to be taken.  Courts have recognized that a limitation that requires taking "*some action* in response to the information is also 'abstract as an ancillary part of such collection and analysis.'" *CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.*, No. 3:16-cv-906, 2017 WL 536833, at *2 (E.D. Va. Feb. 9, 2017) (quoting *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016)) (emphasis added).

Claim 27 is similar to abstract ideas found to be patent-ineligible in numerous other cases.  For example, in *FairWarning IP*, the Federal Circuit affirmed the patent-ineligibility of a claim directed to "collect[ing] information regarding accesses of a patient's personal health information, analyz[ing] the information according to one of

several rules . . . to determine if the activity indicates improper access, and provid[ing] notification if it determines that improper access has occurred." 839 F.3d at 1093. And in *CalAmp Wireless*, the court concluded that a method claim for "(1) assessing the current location of the object; (2) obtaining the object's required location for the corresponding time; (3) determining whether the object is in the required location; and (4) requesting information in response to that determination" was abstract. 2017 WL 536833, at *2–3.

Like Claim 27 of the '033 patent, the *FairWarning IP* and *CalAmp Wireless* claims both recited receiving relationship information (i.e., past accesses to a patient's health information or the required and current location information), analyzing that information (i.e., applying rules or determining whether the object is in the required location) and taking an action (i.e., storing a formula or requesting information). Claim 27's recitation of receiving "relational metadata" information, analyzing that information to identify an action, and initiating the action is no different and no less abstract than the claims invalidated in *FairWarning IP* and *CalAmp Wireless*. *See also Intellectual Ventures v. Capital One Bank,* 792 F.3d at 1369–71 (claims involving receiving information about a user, analyzing that information, and tailoring a display invalid as abstract). Claim 27 of the '033 patent thus fails the first step of the *Alice* test.

**B.    Claim 27 of the '033 Patent Fails Step Two Because It Does Not Disclose an "Inventive Concept" Sufficient to Transform the Ineligible Abstract Idea into a Patent-Eligible Invention.**

Claim 27 of the '033 patent also fails the second part of the *Alice* test because it does not add an "inventive concept" to the abstract idea. The claim recites no specific hardware or software other than a "computer readable storage medium," which carries no weight in the patent-eligibility analysis. *Loyalty Conversion*, 66 F. Supp. 3d at 839 ("[L]imitations reciting a computer and 'non-transitory computer-readable mediums,' . . . add[] nothing of substance to the basic . . . concept other than to provide that the

1   steps . . . are performed by computers."); *see also CyberSource Corp. v. Retail*

2   *Decisions, Inc.*, 654 F.3d 1366, 1373–75 (Fed. Cir. 2011) ("[A] claim to a computer

3   readable medium" must be treated "as a process claim for patent-eligibility purposes.").

4        The Complaint alleges that "[r]elational metadata was a new way to use metadata

5   in the context of interactive television" and that the claims are inventive because of the

6   "relationship identifier" and "dataset element." Compl. ¶¶ 93, 95. But the specification

7   acknowledges that the concept of metadata was "known." '033 patent, col.2, ll.46–47.

8   And it describes "relational metadata" in a way that would include nearly any type of

9   data or information: "data, or information, about other data" "which indicates a

10  relationship between two or more sets of data." *Id.*, col.2, ll.47–48; *id.*, col.6, ll.6–7.

11  Likewise, the claim itself states that the "relationship identifier" is something that

12  merely "specifies a type of relationship" while the "dataset element identifies . . . data."

13  *Id.*, col.21, ll.2–5. To be clear, the patent does not explain or require a unique way for

14  these elements to describe the data or relationship. The "relationship identifier" and

15  "dataset element" cannot supply an inventive concept because "[t]he creation of a

16  unique identifier by concatenating—or combining—[multiple] pieces of data is not

17  sufficiently inventive." *Secure Mail Sols. LLC v. Universal Wilde, Inc.*, 169 F. Supp.

18  3d 1039, 1053 (C.D. Cal. 2016); *see Intellectual Ventures I LLC v. Symantec Corp.*,

19  838 F.3d 1307, 1313–14 (Fed. Cir. 2016) (explaining that receiving and characterizing

20  data based on "identifiers" does not make information processing less abstract).

21       Indeed, several courts have concluded that claims involving "metadata" fail to

22  transform an abstract idea into patent-eligible subject matter. In *Intellectual Ventures*

23  *I LLC v. Erie Indemnity Co.*, the Federal Circuit explained that the use of metafiles and

24  metadata is "yet another natural consequence of carrying out the abstract idea in a

25  computing environment and is, therefore, also insufficient to transform a patent-

26  ineligible abstract idea into a patent-eligible invention." 850 F.3d 1315, 1329 (Fed.

27  Cir. 2017). In *Broadband iTV, Inc. v. Oceanic Time Warner Cable, LLC*, the court

28  determined that a claim that recited "uploading video content with ***metadata***

1    prescribing hierarchical categories" contained "no element . . . that call[s] for computer

2    or Internet technology to behave in an unconventional manner."  135 F. Supp. 3d 1175,

3    1189–90 (D. Haw. 2015), *aff'd sub nom. Broadband iTV, Inc. v. Hawaiian Telcom,*

4    *Inc.*, 669 F. App'x 555 (Fed. Cir. 2016) (emphasis added).  And in *Netflix, Inc. v. Rovi*

5    *Corp.*, the court concluded that a dependent claim requiring "associated ***metadata***" did

6    not "provide meaningful limitations on the abstract idea of using combination

7    categories."  114 F. Supp. 3d 927, 940 (N.D. Cal. 2015), *aff'd*, 670 F. App'x 704 (Fed.

8    Cir. 2016) (emphasis added).   Here, similarly, limiting the idea of identifying,

9    processing, and acting on related information to "metadata" does not supply an

10   "inventive concept" under *Alice* step two.

11          The Complaint also alleges that the '033 patent "invents an architecture that

12   specifically incorporates components for injecting relational metadata into a

13   programming stream and for processing it appropriately."  Compl. ¶ 92.  However, the

14   claims do not include any limitation related to "injecting," encoding, or otherwise

15   inserting relational metadata into a programming stream.   And the fact that the

16   relational metadata must "correspond[] to a broadcast signal" is irrelevant because

17   limiting an abstract idea to a particular product type or field cannot supply the necessary

18   "inventive concept."  *See Alice,* 134 S. Ct. at 2358; *Groundswell Techs.*, 2016 WL

19   6661177, at *7 (Birotte, J.) ("[S]imply limiting the claims . . . to the category of

20   environmental data reporting and monitoring is not enough to make the claims patent

21   eligible." (citing cases)).

22          The claims also do not require any particular means of "processing" the

23   relational metadata "appropriately."  Even the specification lacks details regarding the

24   functionality of the disclosed relational metadata processing engine—which itself is

25   also not required by Claim 27 anyway.  For example, the specification merely states

26   that "the parsing unit is configured to parse received data and identify relational

27   metadata instructions which are included therein."  '033 patent, col.3, ll.40–42; *id.*,

28   col.15, ll.32–36; *see also id.*, col.3, ll.42–46; *id.*, col.15, ll.36–41 ("association unit");

*id.*, col.3, ll.46–51; *id.*, col.15, ll.49–52 ("decision unit"). Even if they were required by Claim 27, these unclaimed processing steps, masquerading as structures, could not supply an inventive concept when the patent provides no implementation details.

Finally, the elements of Claim 27 are not explicitly even limited to computer data or computer information. The specification suggests that the claimed steps may be employed on a variety of conventional receiving devices, for example, "a set-top box (STB), a television (TV), a video cassette recorder (VCR), a personal video recorder (PVR), a personal digital assistant (PDA), a personal computer (PC), a video game console, or a mobile/cell phone." *Id.*, col.4, ll.59–64. The specification also explains that the metadata may be conveyed to the receiving device through conventional broadcast signals or point-to-point connections. *Id.*, col.5, l.32 – col.6, l.42.

Because Claim 27 of the '033 patent lacks any additional features that transform the abstract concept into a patent-eligible invention, Count 4 of Plaintiffs' Complaint should be dismissed.

## III. COUNT 5 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE CLAIM 1 OF THE '169 PATENT IS INVALID UNDER 35 U.S.C. § 101.

Plaintiffs' Complaint alleges that NFLE infringes Claim 1 of the '169 patent. Compl. ¶ 117. Claim 1 is directed to the idea of not beginning a presentation until certain resources are acquired. *See, e.g.*, '169 patent, col.21, ll.9–13. The '169 patent claims this concept with broad, result-oriented language that does not specify how any of the claimed steps—i.e., the recited "receiving," "determining," "initiating," or "prohibiting"—are accomplished. Claim 1 recites:

1. A method comprising:

   receiving one or more directives, wherein said directives are indicative of an audio, video and/or graphic presentation which requires a set of resources;

   determining whether said one or more directives includes a prerequisite directive which indicates that acquisition of a subset

of said set of resources is a prerequisite for initiating the presentation;

initiating said presentation, in response to determining the one or more directives do not include said prerequisite directive; and

prohibiting initiation of said presentation until said subset of resources are acquired, in response to determining the one or more directives include said prerequisite directive.

'169 patent, col.52, ll.8–22.

### A. Claim 1 of the '169 Patent Fails Step One Because It Is Directed to the Abstract Idea of Not Beginning a Presentation Until Certain Resources Are Acquired.

Claim 1 boils down to a simple decision—"Do I have everything I need to get started?"—that is performed by people every day without any technological help. A play director knows that he must have certain sets, props, and actors in place before the curtain opens. A conductor knows that he must have his orchestra in position before commencing a concert. And a movie theater operator knows he must load the film before show time. "[H]umans have always performed these functions." *Content Extraction*, 776 F.3d at 1347 (finding that claims directed to well-known, human-performed functions were abstract).

That the steps of Claim 1 can be performed by humans, without the benefit of technology, confirms that they are abstract. *See Loyalty Conversion*, 66 F. Supp. 3d at 842. For example, as shown in the table below, a school student can perform each claimed step in the context of a show-and-tell assignment.

| *'169 Patent, Claim 1* | *Performance by Student* |
|---|---|
| A method comprising: receiving one or more directives, wherein said directives are indicative of an audio, video and/or graphic presentation which requires a set of resources; | Student receives a presentation assignment from his teacher. |

| | |
|---|---|
| determining whether said one or more directives includes a prerequisite directive which indicates that acquisition of a subset of said set of resources is a prerequisite for initiating the presentation; | Student determines if the presentation assignment is for a show-and-tell, which requires bringing an item to class. |
| initiating said presentation, in response to determining the one or more directives do not include said prerequisite directive; and | If the student determines that the presentation assignment is not for a show-and-tell, the student may give the presentation without bringing anything to class. |
| prohibiting initiation of said presentation until said subset of resources are acquired, in response to determining the one or more directives include said prerequisite directive. | If the student determines that the presentation assignment is for a show-and-tell, the student cannot begin the show-and-tell until he has brought the item to class. |

The broad, result-focused, functional language employed in the claim is further confirmation of its patent-ineligibility. *Elec. Power*, 830 F.3d at 1356. Claim 1 provides no detail as to what a "directive" or "prerequisite directive" is, how the directives are received, from where the directives are received, how the presence of a prerequisite directive is determined, what resources may be required, how those resources are acquired, or how the presentation is initiated or prohibited. The claim therefore "do[es] no more than describe a desired function or outcome" of not beginning a presentation until certain resources are acquired, "without providing any limiting detail that confines the claim to a particular solution." *Affinity Labs v. Amazon.com*, 838 F.3d at 1269. "The purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Id.* That Claim 1 does not require anything concrete or tangible—i.e., any particular computer or other device—likewise confirms that the claim "cannot be characterized as an [eligible] improvement in computer technology." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1150 (Fed. Cir. 2016) (affirming ineligibility of claims directed to analyzing "directive statements").

Applying *Alice*, courts have determined that similar claims directed to delaying a presentation until a condition is satisfied are abstract. For example, in *Ultramercial,*

1  *Inc. v. Hulu LLC*, the Federal Circuit affirmed the invalidity of claims requiring a

2  viewer to watch an advertisement before allowing the viewer access to a media product.

3  *See* 772 F.3d 709, 712, 715 (Fed. Cir. 2014).   Like Claim 1 of the '169 patent, the

4  *Ultramercial* patent claims recited the display of a presentation (there, a "media

5  product") only upon satisfaction of certain conditions (there, watching an

6  advertisement).   Claim 1 of the '169 patent is even more abstract than the *Ultramercial*

7  claims because it merely asks whether some unspecified, generic resources have been

8  obtained before initiating a presentation.   Consequently, Claim 1 of the '169 patent

9  fails the first step of the *Alice* analysis.

10  **B.   Claim 1 of the '169 Patent Fails Step Two Because It Does Not**
11  **Disclose an "Inventive Concept" Sufficient to Transform the**
     **Ineligible Abstract Idea into a Patent-Eligible Invention.**

12  Claim 1 of the '169 patent also fails the second step of the *Alice* test because it

13  fails to add "an inventive concept" to the abstract idea.   Instead, the claim recites a

14  bare, abstract, method that is untethered to any particular technology and could apply

15  to a wide variety of presentations.   In short, there is nothing in the claim to serve as the

16  "additional element" needed to "'transform' the claimed abstract idea into a patent-

17  eligible application."   *Alice*, 134 S. Ct. at 2355, 2357.

18  The Complaint alleges that Claim 1 is inventive because it "requires the presence

19  of certain structures such as 'the directives'" and "requires the programming structure

20  that will provide the claimed functionality."   Compl. ¶ 118.   To begin with, "[n]o

21  meaningful limitations are placed on the hardware or software required to be used in

22  the claimed methods or systems" and the asserted claim "do[es] not contain any

23  limitations regarding specific hardware or software."   *Williamson*, 212 F. Supp. 3d at

24  899.   Further, the specification explains that the method may be carried out by a variety

25  of ordinary "receiving devices," including "any suitable device, such as a set-top box

26  (STB), a television (TV), a video cassette recorder (VCR), a digital video recorder

27  (DVR), a personal digital assistant (PDA), a personal computer (PC), a video game

28

1  console, or a mobile/cell phone." '169 patent, col.3, ll.11–15.   Likewise, the

2  specification explains that the networks involved can encompass anything from an

3  "ordinary telephone line" to "a satellite . . . broadcast network." *Id.*, col.3, l.52 – col.4,

4  l.27.  Clearly, no special or inventive programming structure is required.

5       Claim 1's recitation of "directives" also cannot supply an inventive concept.

6  Even if the directives were limited to computer directives—which they are not—the

7  specification explains that the directives may be provided in "HTML, JavaScript . . .

8  CSS, or other languages," or any "languages and constructs which are commonly used

9  in creating and manipulating Web content." *Id.*, col.4, ll. 31–34; *id.*, col.47, ll.5–7; *see*

10 *also id.*, col.8, ll.19–26.   The specification cannot and does not claim that these

11 languages were new or part of the contribution of the '169 patent.   And their

12 "interchangeability indicates the claimed invention uses the components' conventional

13 functions and does not address any particular technological problem." *EveryMD.com*,

14 slip op. at 13.  "Whether analyzed individually or as an ordered combination," Claim

15 1 of the '169 patent recites directives and resources "at too high a level of generality to

16 constitute an inventive concept." *Evolutionary Intelligence LLC v. Sprint Nextel Corp.*,

17 --- F. App'x ----, 2017 WL 655442, at *2 (Fed. Cir. 2017).[3]

18       The Complaint also suggests that the '169 patent is inventive because it "us[es]

19 a scripting protocol that is . . . designed so that other computers . . . could understand

20 each other, and automate the [claimed] process."  Compl. ¶ 115.  But, as noted above,

21 OpenTV did not invent the scripting languages mentioned in the specification.  And

22 "the transfer of content between computers is merely what computers do and does not

23

---

24 [3] For the same reasons, resolution of subject matter eligibility for Claim 1 of the '169
   patent should not be deferred until after claim construction.  While the Northern
25 District of California declined to grant summary judgment on the '169 patent before
   claim construction, *OpenTV, Inc. v. Netflix Inc.*, No. 3:14-cv-01525, slip op. at 5–8
26 (N.D. Cal. Dec. 16, 2014) (Dkt. No. 71), the Federal Circuit has since repeatedly
   explained that claims like these, even if limited to computers, are not patent-eligible
27 because they fail to add anything to the abstract idea beyond routine, conventional
   activities.  *See, e.g., Intellectual Ventures I v. Erie Indem.*, 850 F.3d at 1329.
28

change the analysis." *Ultramercial*, 772 F.3d at 716–17.  Further, any "automatic" feature of the alleged invention is not special to the claimed "receiving," "determining," "initiating," or "prohibiting" steps.  Real-time information processing is inherent to computers; it is not a unique improvement offered by the '169 patent.  "[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept." *Intellectual Ventures I v. Capital One Bank*, 792 F.3d at 1367.

Consequently, Claim 1 of the '169 patent also fails step two of the *Alice* analysis, and Count 5 of the Complaint should be dismissed because Claim 1 is directed to patent-ineligible subject matter and therefore invalid.

## IV.   COUNT 6 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE CLAIM 1 OF THE '888 PATENT IS INVALID UNDER 35 U.S.C. § 101.

The Complaint alleges that NFLE infringes Claim 1 of the '888 patent.  Compl. ¶ 140.  Claim 1 is directed to the idea of "organizing, transmitting, and presenting media from multiple sources," '888 patent, col.1, ll.43–45; *id.*, col.1, ll.16–21, that is, the abstract idea of organizing and combining media information for transmission.  The patent purports to provide a "method that allows a transmission system to organize and transmit a related set of media" and information about the media such that a "display platform" can display information about the "available media and the capabilities of the platform." *Id.*, col.1, ll.50–55.

Claim 1 of the '888 patent recites this concept with broad, result-oriented language.  The claim does not specify how any of the claimed functions—i.e., "creating a framework definition," "creating a menu," "combining" video, audio, and metadata "into a broadcast stream," or "transmitting" the menu and combined broadcast stream—are accomplished.  Claim 1 recites:

1.  A method for producing a broadcast stream that contains various stream types of audio content, video content, and metadata content comprising:

creating a framework definition that identifies said various stream types in said audio content, said video content and said metadata content associated with a broadcast and attributes of said various stream types including the format of said various stream types;

comparing an audio format of said audio content with an audio transmission format and converting said audio content to said audio transmission format if said audio format and said audio transmission format differ;

comparing a video format of said video content with a video transmission format and converting said video content to said video transmission format if said video format and said video transmission format differ;

comparing a metadata format of said metadata content with a metadata transmission format and converting said metadata content to said metadata transmission format if said metadata format and said metadata transmission format differ;

creating a menu describing said audio content, said video content, and said metadata content;

combining said audio content, said video content, and said metadata content into a broadcast stream for transmission to a plurality of receivers that are capable of checking said various stream types to determine which streams of said various stream types may be used by said receivers;

transmitting said menu to a plurality of receivers that are capable of checking said stream type to determine which streams may be used by said receivers; and

transmitting said broadcast stream.

'888 patent, col.12, ll.35–67.

## A.   Claim 1 of the '888 Patent Fails Step One Because It Is Directed to the Abstract Idea of Organizing and Combining Media Information for Transmission.

Claim 1 fails the first step of the *Alice* analysis because it is drawn to the abstract idea of organizing and combining media information for transmission.  Cutting through the prolix language of the claim, the claim comprises the simple steps of: (i) converting video, audio, and metadata into a particular output format, (ii) combining the audio, video, and metadata into a data stream, and (iii) broadcasting the data stream.  The

abstract nature of the claim is confirmed by the '888 patent's description of the invention as "a system and method for organization, combination, transmission and reception of media from a range of sources." '888 patent, col.1, ll.16–21, 43–45; *see also id.*, col.1, ll.50–55.

The Federal Circuit has explained that claims like these, directed to "organizing . . . and manipulating data" are abstract. *Intellectual Ventures I v. Capital One Fin.*, 850 F.3d at 1340–41. For example in *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, the Federal Circuit concluded that claims directed to combining two existing data sets and "organizing this information into a new form" recited the "ineligible abstract process of gathering and combining data." 758 F.3d 1344, 1351 (Fed. Cir. 2014). The Federal Circuit explained that "a process that employs mathematical algorithms to manipulate existing information to generate additional information," like Claim 1 of the '888 patent, "is not patent eligible." *Id.*

Similarly, in *Groundswell Technologies*, this Court invalidated claims that recited: (i) receiving transmitted data from "a plurality of sensor packages"; (ii) "manipulating" that data into a matrix; (iii) automatically "processing" the "matrix formatted data" to "creat[e] GIS compatible data"; (iv) analyzing the GIS compatible data to "generate a cartographic layout"; and (v) displaying the cartographic layouts. 2016 WL 6661177, at *1–2. This Court determined that the claims were directed to the abstract idea of "collecting data, analyzing data, and then converting that data into a visual representation on a map." *Id.* at *6. Claim 1 of the '888 patent is directed to collecting, manipulating, and combining TV data to be broadcast for display instead of collecting, combining, and manipulating sensor data to create a map display, and is no less abstract than the *Groundswell Technologies* claims. *See also Elec. Power*, 830 F.3d at 1353–54 ("[M]erely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis.").

In addition, the steps recited in Claim 1 are purely functional. The claim does not explain how the audio/video/metadata streams are identified or how the attributes of each stream are determined, how the stream formats are converted to the transmission format, how the menu is created and how it describes the content of the streams, how the content of the three streams is combined into a single broadcast stream, or how that broadcast stream is transmitted. Like the claims invalidated by this Court in *Groundswell Technologies*, "a close review of the language in the claims shows that this 'how' element is completely missing." 2016 WL 6661177, at *8.

**B.   Claim 1 of the '888 Patent Fails Step Two Because It Does Not Disclose an "Inventive Concept" Sufficient to Transform the Ineligible Abstract Idea into a Patent-Eligible Invention.**

Claim 1 of the '888 patent does not contain any "additional features" that render the claim patent-eligible. *See Alice*, 134 S. Ct. at 2357; *Affinity Labs v. DIRECTV*, 838 F.3d at 1262. The Complaint alleges that it "effects an improvement in technology because it collects, reformats and combines the content into a stream that can be broadcast." Compl. ¶ 138. But the "problem" of collecting, formatting, combining, and transmitting information from multiple sources is not new. *See OpenTV, Inc. v. Apple. Inc.*, No. 14-CV-01622-HSG, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) ("The problem of how to transmit, receive, store, and organize confidential information deriving from multiple sources is not a creature of the Internet age: solutions to this problem date back to the invention of smoke signals."). And to solve this problem, Claim 1 recites only "conventional steps, specified at a high level of generality, which is insufficient to supply an inventive concept." *Ultramercial*, 772 F.3d at 715 (quoting *Alice*, 134 S. Ct. at 2357) (citation omitted).

The '888 patent does not and cannot claim that the converting and combining steps of Claim 1 were new or part of the contribution of the '888 patent. And there is nothing in the claim, for example, that describes organizing media from multiple sources in a way that is an improvement over (or even different from) conventional

ways of organizing media from multiple sources. Likewise, there is nothing in the claim that describes a new or improved method of combining video, audio, and metadata into a single data stream or for broadcasting the resulting stream. Rather, under the claim as worded, *any* method of organizing and combining the media, and then broadcasting it, would presumably suffice.

Claim 1 also does not recite any particular hardware or device and does not require anything other than off-the-shelf conventional software for organizing, combining, transmitting, or presenting the media. Indeed, the specification acknowledges that the claimed method can be performed using commercially available computer technology, for example, MPEG encoding and modulation. *See, e.g.*, '888 patent, col.8, ll.48–51; *id.*, col.9, ll.34–37, 48–52; *id.*, col.10, ll.24–27; *id.*, col.11, ll.25–28 (referring to commercially available encoding, modulating, metadata packaging, multiplexing, and decoding equipment available from various existing manufacturers). Thus, these "limitations recite routine computer functions, such as the sending and receiving [of] information" that "are no more than the performance of well-understood, routine, and conventional activities previously known to the industry." *Intellectual Ventures I v. Erie Indem.*, 850 F.3d at 1329 (citation omitted).

The Complaint alleges that the '888 patent is inventive because the recited "framework definition" and "menu" were not conventional. Compl. ¶¶ 138, 141. These elements cannot supply inventive concepts because the plain language of Claim 1 reveals that they merely identify the data types/formats to be converted (claim step one) and describe the content to be combined (claim step five). The specification confirms that the "framework definition" is simply a data structure that describes the audio, video, and metadata content, from which a display menu is generated. '888 patent, col.6, l.20 – col.8, l.54. Using frameworks and menus to identify and organize conventional data does not create a new type of data and does not make the '888 patent claims any less abstract. *See Activision*, 2016 WL 6822751, at *10.

1   Because Claim 1 lacks any inventive features, it fails the inventive-concept test

2   for the same reason as the claims in *Electric Power*, where the Federal Circuit

3   explained that:

4       [M]erely selecting information, by content or source, for collection,
        analysis, and display does nothing significant to differentiate a process

5       from ordinary mental processes, whose implicit exclusion from § 101

6       undergirds the information-based category of abstract ideas.

7                                                    * * * *

8       Inquiry therefore must turn to any requirements for *how* the desired
        result is achieved.  But in this case the claims' invocation of computers,

9       networks, and displays does not transform the claimed subject matter into
        patent-eligible applications.

10

11  830 F.3d at 1355.  As such, Claim 1 also fails step two of the *Alice* analysis and is

12  invalid for claiming patent-ineligible subject matter.

13  **V.   COUNT 7 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE**

14  **CLAIM 8 OF THE '736 PATENT IS INVALID UNDER 35 U.S.C. § 101.**

15  The Complaint alleges that NFLE infringes Claim 8 of the '736 patent.  Compl.

16  ¶ 163.  Claim 8 is directed to the abstract idea of indicating that information is available

17  and accessing that information.  The patent explains that viewers of video programs

18  "may often seek to discover more information which relates to a topic presented in the

19  video program." '736 patent, col.1, ll.39–43.  Accordingly, the patent provides that

20  links to online information may be added to video programs to allow access to that

21  information.  *Id.*, col.3, ll.25–28.

22  Again, Claim 8 recites this concept with broad, result-oriented language.  The

23  claim does not specify how the "indicating" and "accessing" steps are performed or

24  how "a link [is] provided in a video program."  Claim 8 provides:

25      8.  A method of providing to a user of online information services
        automatic and direct access to online information through a link

26      provided in a video program, comprising:

27          indicating to the user that a link to online information services is
            available for receiving the online information; and

28

automatically and directly electronically accessing said online information associated with said link in response to a user initiated command so that the user has direct access to the online information.

'736 patent, col.10, ll.43–52.

### A. Claim 8 of the '736 Patent Fails Step One Because It Is Directed to the Abstract Idea of Indicating that Information Is Available and Accessing that Information on Request.

Claim 8 of the '736 patent is directed to the simple, abstract concept of indicating that information is available and accessing that information on request. Claim 8 involves only two steps: (1) indicating that a link to online information is available, and (2) accessing that information. '736 patent, col.10, ll.43–53.

This simple concept reflects longstanding human activity that demonstrates the abstract nature of the claim. *See, e.g., Content Extraction,* 776 F.3d at 1347 (comparing claims to activities long performed by bankers). For example, the following chart illustrates an example of how a school librarian can perform the two claimed steps without any technology.

| *'736 Patent, Claim 8* | *Mental Steps* |
|---|---|
| A method of providing to a user of online information services automatic and direct access to online information through a link provided in a video program, comprising: | |
| indicating to the user that a link to online information services is available for receiving the online information; and | Librarian tells a school student that books about sports are available at a certain call number. |
| automatically and directly electronically accessing said online information associated with said link in response to a user initiated command so that the user has direct access to the online information. | If the student expresses interest, the librarian directs the student to the shelf and call numbers of the sports books. |

Limiting the idea of providing access to available information to "online information" access via "a link provided in a video program" does not remove it from the realm of abstractness. These elements simply "provide a generic environment in which to carry out the abstract idea of" providing access to available information. *In*

1  *re TLI Commc'ns LLC*, 823 F.3d 607, 611 (Fed. Cir. 2016).   At bottom, Claim 8

2  "merely implement[s] an old practice"—i.e., providing access to available information

3  upon request—"in a [purportedly] new environment"—i.e., through links in video

4  programs—which is not patent eligible.  *FairWarning IP*, 839 F.3d at 1094; *see also*

5  *EveryMD.com*, slip op. at 13 (finding abstract claims that relied on "standard

6  components used in conventional ways" and "merely orient[ed] the abstract idea within

7  a particular existing technological environment").

8       Claim 8 also fails step one because it fails to provide details as to how the link

9  is "provided" in a video program, how the availability of online information is

10  "indicat[ed]," or how the online information is "automatically and directly

11  electronically access[ed]."   Instead, "[t]he purely functional nature of the claim

12  confirms that it is directed to an abstract idea, not to a concrete embodiment of that

13  idea."  *Affinity Labs v. Amazon.com*, 838 F.3d at 1269.

14       Because it lacks anything unconventional, Claim 8 stands in contrast to the

15  hyperlink-related claims evaluated in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773

16  F.3d 1245 (Fed. Cir. 2014).  The *DDR* court concluded that the claims at issue were

17  not abstract because they created a "result that ***overrides the routine and conventional***

18  ***sequence of events ordinarily triggered by the click of a hyperlink***."  *Id.* at 1258

19  (emphasis added).  "Instead of the computer network operating in its normal, expected

20  manner by sending the website visitor to the third-party website that appears to be

21  connected with the clicked advertisement, the claimed system generate[d] and

22  direct[ed] the visitor to [a] hybrid web page."  *Id.* at 1258–59.  Here, in contrast, the

23  '736 patent admittedly does nothing more than extend the "routine and conventional

24  sequence of events ordinarily triggered by the click of a hyperlink," *id.*, to a link used

25  in a video program.  *E.g.* '736 patent, col.3, ll.25–28.

26       As discussed above, the fundamental concept underlying hyperlink

27  technology—indicating that information is available and providing access to that

28  information if requested—was practiced long before computers and the Internet.  *E.g.*

1  *id.*, col.6, ll.1–7, 25–26.  Claim 8 of the '736 patent thus fails step one of the *Alice*

2  analysis.

3      **B.    Claim 8 of the '736 Patent Fails Step Two Because It Does Not Disclose an "Inventive Concept" Sufficient to Transform the Ineligible Abstract Idea into a Patent-Eligible Invention.**

4

5      The generic recitations of "a link," "electronically accessing," and "online

6  information" in Claim 8 cannot provide an inventive concept that satisfies *Alice* step

7  two, because "the use of the Internet is not sufficient to save otherwise abstract claims

8  from ineligibility under § 101."  *Ultramercial*, 772 F.3d at 716.  This is, of course,

9  because the Internet "is a ubiquitous information-transmitting medium, not a novel

10  machine" and "[a]ny transformation from the use of computers or the transfer of

11  content between computers is merely what computers do and does not change the

12  analysis."  *Id.* at 716–17; *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359,

13  1363 (Fed. Cir. 2015) ("[R]elying on a computer to perform routine tasks more quickly

14  or more accurately is insufficient to render a claim patent eligible.").

15      As with the other claims at issue, the fact that the link is "provided in a video

16  program" is insufficient because limiting an abstract idea to a particular product type

17  cannot supply the necessary "inventive concept."  *See Alice*, 134 S. Ct. at 2357–58.  In

18  *EveryMD.com*, this Court concluded that claims describing "basic internet activity, in

19  which a server transmits data through well-established computer components" failed

20  *Alice* step two "[e]ven considering that some of this data may be transmitted to a

21  telephone" because "both the computer and the telephone behave as expected,

22  transmitting and receiving data according to known methods."  No. CV 16-06473-AB

23  (JEMx), slip op. at 18 (C.D. Cal. May 10, 2017) (Dkt. No. 32) (Birotte, J.).  Similarly,

24  here, even though Claim 8 provides a link *in a video*, both the link and the video

25  "behave as expected" such that the claim does not recite an inventive concept.  *Id.*

26      Claim 8 is also not tied to any particular type of device and does not recite any

27  particular hardware.   And the specification repeatedly explains that the claimed

28

invention employs existing, conventional technology.  For example, the video program is displayed on a "conventional reproducing system . . . such as a television set" and "the design of [the] indicator signal generator is well known in the art."  '736 patent, col.5, ll.21–23; *id.*, col.6, ll.9–26.  The '736 patent describes conventional means of indicating that more information is available, such as "a message displayed on a video screen . . . a light, a sound or a wireless tactile indicator, e.g., vibrating wristband or clip-on unit."  *Id.*, col.3, ll.60–63.  Similarly, the online information address may be extracted "in any of several existing ways" that "are well known in the art and need not be described." *Id.*, col.6, ll.1–26; *see also id.*, col.5, ll.48–53.

The Complaint focuses on the alleged novelty of the '736 patent (*see* Compl. ¶¶ 161–62, 164), but "[t]he 'novelty' of any element or step[] in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Diamond v. Diehr*, 450 U.S. 175, 188–89 (1981).  The Complaint also alleges that the '736 patent provides a "technical solution . . . to allow a user to retrieve information from an online source that is included with the video program stream and establishing a separate link with that online source."  Compl. ¶ 161.  But the specification describes combining well-known Internet links or addresses with video programs through conventional technology, such as modems, generic processors, and conventional televisions or computer monitors and techniques "well known in the art."  *See* '736 patent, col.7, ll.43–61; *see also id.*, col.5, l.42 – col.6, l.26.  As such, it is "directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." *In re TLI*, 823 F.3d at 612.

Claim 8 of the '736 patent thus also fails step two of the *Alice* analysis, and Count 7 of the Complaint should be dismissed because Claim 8 is directed to patent-ineligible subject matter and therefore invalid.

1

2

**VI.   COUNT 8 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE CLAIM 19 THE '172 PATENT IS INVALID UNDER 35 U.S.C. § 101.**

The Complaint alleges that NFLE infringes Claim 19 of the '172 patent.  Compl.

3

¶ 183.  Claim 19 is directed to the abstract idea of limiting access to information based

4

on location.  According to the patent, "[t]he present invention relates . . . to . . . limiting

5

the distribution of information on a communications network based on geographic

6

location." '172 patent, col.1, ll.7–10.  Claim 19 provides:

7

8

9

19. A method for controlling communications between first and second communications units coupled for communication over the Internet, comprising the steps of:

10

11

receiving location information over the Internet with the first communications unit, the location information corresponding to the geographic location of the second communications unit;

12

13

determining, from the location information, whether the geographic location of the second communications unit is within a predefined geographic region; and

14

15

16

controlling the communication of further information between the first and second communications units, dependent upon the determination of whether the second communication unit is within the predefined geographic region, comprising:

17

18

19

20

21

providing the second communications unit with access to first information in the event that the geographic location of the second communications unit is determined to be within the predefined region, and providing the second communications unit with access to second information in the event that the geographic location of the second communications unit is determined to not be within the predefined region, wherein said second information includes information different from said first information.

22

'172 patent, col.17, ll.8–32.

23

24

**A.   Claim 19 of the '172 Patent Fails Step One Because It Is Directed to the Abstract Idea of Limiting Access to Information Based on Location.**

25

Claim 19 of the '172 patent claims the abstract idea of limiting access to

26

information based on location through the basic steps of (1) receiving location

27

information, (2) determining if the location is within a predefined area, and (3)

28

1   providing access to different information depending on whether the device is within or
2   outside the predefined area.  One need look no further than the title of the '172 patent
3   to determine the "basic character" of the claim: "Limiting distribution of information
4   on a communication network based on geographic location."  Taking the abstract
5   concept of limiting access to information based on location and applying it to devices
6   on a communication network makes the idea no less abstract.

7           Indeed, other courts have addressed patents with remarkably similar claims and
8   concepts, and have concluded that those claims were invalid as abstract.  In *Intellectual*
9   *Ventures I LLC v. Capital One Bank (USA)*, the Federal Circuit rejected under Section
10  101 a patent that similarly used location to determine content presented to a user.  *See*
11  792 F.3d 1363, 1369–71 (Fed. Cir. 2015).  There, one aspect of the patent was directed
12  to displaying Internet content "as a function of the user's personal characteristics."  *Id.*
13  at 1369.  The patent owner admitted that "tailoring content based on the viewer's
14  location or address would satisfy" this limitation.  *Id.*  The Federal Circuit held that
15  "[t]his sort of information tailoring is 'a fundamental . . . practice long prevalent in our
16  system.'"  *Id.* (quoting *Alice*, 134 S. Ct. at 2356).  The court analogized this to tailoring
17  newspaper inserts or advertisements "based on the customer's location" and held that
18  "[p]roviding this minimal tailoring . . . is an abstract idea."  *Id.*  This "minimal
19  tailoring" is the exact concept found in Claim 19 of the '172 patent, where a "first
20  information" is presented to devices within the predefined region, and a "second
21  information" is presented to devices outside the predefined region.

22          In another very similar case, *Front Row Technologies, LLC v. NBA Media*
23  *Ventures, LLC*, the District of New Mexico—relying on the Federal Circuit's
24  *Intellectual Ventures I* decision discussed above—held that a claim that "(i) determines
25  a handheld device user's location; and (ii) authorizes devices within a certain area to
26  receive streaming video" was directed to the abstract idea of "restricting content based
27  on a user's location."  204 F. Supp. 3d 1190, 1266, 1274 (D.N.M. 2016) (appeal
28  pending).  The similarities between this *Front Row* claim and Claim 19 of the '172

1   patent are striking, as both involve the idea of limiting access to information on a
2   communications network based on location.  Like the *Front Row* claim, the steps of
3   Claim 19 "barely recite any limitations beyond the abstract concept."  *Id.* at 1280.

4          Further, the Federal Circuit has noted that businesses such as newspapers have
5   long practiced this abstract idea with advertisements.  *See Intellectual Ventures I v.*
6   *Capital One Bank*, 792 F.3d at 1369.  Another example of the concept is blackouts of
7   sports television broadcasts, which have long made home games unavailable on local
8   television in order to encourage fans to attend the games in person.  These practices
9   apply the same abstract idea of limiting access to information based on location found
10  in Claim 19 of the '172 patent.  Claim 19 therefore fails the first step in the Section 101
11  analysis.

12         **B.     Claim 19 of the '172 Patent Fails Step Two Because It Does Not**
13                  **Disclose an "Inventive Concept" Sufficient to Transform the**
                    **Ineligible Abstract Idea into a Patent-Eligible Invention.**

14         Claim 19 of the '172 patent fails to disclose an "inventive concept," as required
15  in the second step of the Supreme Court's *Alice* test.  Rather, the claim relies on nothing
16  more than generic computer hardware and "well-understood, routine, conventional
17  activity."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79–80
18  (2012).    For  example,  the  specification  acknowledges  that  the  processor,
19  communications network, and information source could take any form:

20         The  processors  may  comprise  *any  suitable  data  processing  and*
21         *communicating device* controlled, preferably by a software program, to
           operate as described below. The communications network may comprise
22         *any suitable means which allows the recipient processors and the*
           *provider processor to communicate with each other*, including, but not
23         limited to, the internet or world-wide-web, intranet, cable or other hard-
24         wired networks, optical, electromagnetic or other wireless networks, as
25         well as hybrids thereof, or the like.

26         The provider processor 12 is capable of providing information from
27         *any suitable source* 13 (including, but not limited to an on-line source or
28         a  computer  readable  storage  medium  such  as  a  hard  or  floppy  disk,

---

random access memory RAM, read only memory ROM, compact disk (CD), other optical storage disk, such as a DVD, or the like), by communicating such information over a communications network 18.

'172 patent, col.3, l.64 – col.4, l.13 (emphases added).  Indeed, the specification states that the "user computers," "provider computer (or server)," and "communication interfacing" were "well known in the art."  *Id.*, col.5, ll.24–32.

Likewise, the location information may be derived from "any suitable means which provides a computer readable signal that corresponds to the position, or geographic location, of the recipient processors," with the preferred embodiment employing GPS.  *Id.*, col.2, ll.31–41; *see also id.*, col.4, ll.21–34.  The specification further states that the location information derived from "modern GPS technology" may use a "pre-established global coordinate system," *id.*, col.6, ll.5–11, and that "[i]nterface hardware and software for coupling systems, such as GPSs, with computers are *well known in the art*," *id.*, col.6, ll.45–47 (emphasis added).  Indeed, the patent admits that "technology associated with interfacing a positioning system and a computer for communicating information therebetween and processing, by the computer, of geographic location information is *well known in the art* and, for purposes of simplifying the present disclosure, is not described in detail herein."  *Id.*, col.6, ll.51–57 (emphasis added).  In addition to using well-known hardware and software, the '172 patent is also agnostic as to where the determination of location-based restrictions takes place, which could be in either the user computer or the provider's server.  *Id.*, col.12, ll.19–27.

Thus, the specification makes clear that known computers, communication networks, and means for determining location could be used in virtually any combination to perform the abstract method of Claim 19.  This presents a significant risk of preemption.  Indeed, the specification itself deliberately pursues a wide scope, stating that in addition to the preferred embodiments, "other processes which involve the communication over the internet (or other communications network) of location

1
2
3
4
5
6

information obtained from a positioning system . . . and which limit or restrict access to products or services based on such location information, are within the scope of further embodiments of the present invention." *Id.*, col.12, ll.12–18.  Such breadth would preempt all uses of location information to control information distribution on a network.  This is exactly "the concern that drives th[e] exclusionary principle" of unpatentable subject matter under Section 101.  *Alice*, 134 S. Ct. at 2354.

7
8
9

Claim 19 of the '172 patent thus also fails step two of the *Alice* analysis, and Count 8 of the Complaint should be dismissed because Claim 19 is directed to patent-ineligible subject matter and therefore invalid.

## CONCLUSION

10
11
12
13
14

For the foregoing reasons, NFLE respectfully requests that the Court dismiss with prejudice Counts 2 and 4–8 of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

15
16

Dated:  June 30, 2017                    VINSON & ELKINS L.L.P.

17
18

By: */s/  Hilary L. Preston*_____
      Hilary L. Preston

19
20

*Attorneys for Defendant*
*NFL Enterprises LLC*

21
22
23
24
25
26
27
28

## CERTIFICATE OF COUNSEL

Pursuant to Local Rule 7-3, the undersigned counsel certifies that a telephone conference occurred with counsel for Plaintiffs Nagravision SA and OpenTV, Inc. on June 15, 2017, during which Plaintiffs indicated that they oppose this Motion.

Dated: June 30, 2017          Respectfully submitted,

                              VINSON & ELKINS L.L.P.


                              By: */s/ Hilary L. Preston*
                              Hilary L. Preston

                              *Attorneys for Defendant*
                              *NFL Enterprises LLC*


## CERTIFICATE OF SERVICE

The undersigned certifies that on June 30, 2017, the foregoing document was electronically filed with the Clerk of the Court for the UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, using the Court's Electronic Case Filing (ECF) system.  The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice as service of this document by electronic means.  Any party not receiving the Court's electronic notification will be sent a copy of the foregoing document.

Dated:  June 30, 2017          By: */s/ Bruce L. Ishimatsu*
                               Bruce L. Ishimatsu